A091 (Rev. 8/01) Criminal Complaint

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

Clerk, U.S. District Court
Southern District of Texas
FILED

OCT 18 2012

David J. Bradley, Clerk of Court

UNITED STATES OF AMERICA
V.
**Armando MARTINEZ**

**CRIMINAL COMPLAINT**

Case Number: C-12-1109M

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about __10/17/2012__ in __Kennedy__ County, in the
(Date)

Southern    District of    Texas    defendant,    **Armando MARTINEZ**

did knowingly or in a reckless disregard of the fact that an alien had come to, entered, or remained in the United States in violation of law, transport, or move or attempt to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law

in violation of Title __8__ United States Code, Section(s) __1324__.
I further state that I am a(n) __Agent__ and that this complaint is based on the
                                   Official Title
following facts:

See Attached Affidavit of HSI Special Agent    **Charles E. Lehmann**

Continued on the attached sheet and made a part of this complaint:   [X] Yes   [ ] No

_____
Signature of Complainant

**Charles E. Lehmann**
Printed Name of Complainant

Sworn to before me and signed in my presence,

__October 18, 2012__    at    __Corpus Christi, Texas__
Date                                City and State

**B. Janice Ellington,    U.S. Magistrate Judge**
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

# AFFIDAVIT

On October 16, 2012, Armando MARTINEZ was arrested by US Border Patrol at the USBP Traffic Checkpoint on U.S. Highway 77 near Sarita, Texas. This arrest occurred after MARTINEZ was found to be transporting thirteen illegal aliens in a maroon 2008 Freightliner tractor (OK 8776JD) pulling a white 2002 VS2R trailer (TX RM5Y35).

On October 16, 2012, US Border Patrol Agent Wilfredo Miranda was performing immigration inspections at the USBP Traffic Checkpoint on U.S. Highway 77 near Sarita, Texas. At approximately 2300 hours, a maroon 2008 Freightliner tractor (OK 8776JD) pulling a white 2002 VS2R trailer (TX RM5Y35) arrived at the primary inspection area. BPA Miranda asked the driver, later identified as Armando MARTINEZ, his citizenship. MARTINEZ responded he was a U.S. citizen. BPA Miranda then asked MARTINEZ permission to view his bill of lading. Agent Miranda was handed a disorganized stack of bills of lading. Upon review, Agent Miranda observed different dates on the various bills of lading. MARTINEZ explained he picked up part of the load on October 15, 2012 and the second part of the load on October 16, 2012. Agent Miranda then asked MARTINEZ where the tractor trailer was stored. MARTINEZ responded it was parked at the warehouse. MARTINEZ then responded to questioning that the trailer did not have a seal or lock securing it overnight. Agent Miranda then asked MARTINEZ if he would consent to a backscatter X-ray search of his tractor trailer. MARTINEZ consented and was directed to the backscatter x-ray area.

BPA Joseph Corona performed a back scatter inspection of the tractor trailer. BPA Corona observed anomalies inside the trailer which warranted a physical inspection of the inside of the trailer. The inspection resulted in the discovery of thirteen illegal aliens hiding on top of legitimate cargo. MARTINEZ and the thirteen illegal aliens were placed under arrest for violation of 8 USC 1324, Alien Smuggling.

Corpus Christi HSI Duty Agent James Burdette was notified of the facts of the case. These facts were presented to the United States Attorney's Office and AUSA Sam Brown accepted the case against MARTINEZ for federal prosecution for violation of Title 8 United States Code 1324, Alien Smuggling.

**STATEMENT OF ARMANDO MARTINEZ:**

On October 16, 2012, at 2330 hours, BPA Miranda advised MARTINEZ of his Miranda Rights as per form I-214. Miranda Rights administration was witnessed by BPA Daniel Dick. MARTINEZ stated he understood his rights and chose not to make a voluntary statement without the presence of an attorney.

On October 17, 2012, at approximately 1050 hours, HSI/USBP Agent James Burdette and HSI Special Agent Agustin Olivarez responded to the USBP Traffic Checkpoint near Sarita, Texas.

Upon arrival, BPA Jose Villarreal informed Agents Burdette and Olivarez that he began creating administrative records for MARTINEZ when he expressed a willingness to cooperate pertaining to his arrest for alien smuggling. Agent Burdette informed Agent Villarreal that MARTINEZ had

requested an attorney and could not be questioned. Agent Villarreal reiterated that MARTINEZ wanted to cooperate.

Agents Burdette and Olivarez questioned MARTINEZ about his position pertaining to being questioned without an attorney. Lead Border Patrol Agents Richard Cawthard and Nicolas Prado were in attendance.

MARTINEZ stated he did originally refuse to answer questions without the presence of an attorney because the arresting Border Patrol Agents were extremely antagonistic. However he was presently willing to answer questions without the presence of an attorney. SA Olivarez explained to MARTINEZ that once the right to remain silent was invoked, law enforcement could not approach a person for questioning. The individual must approach law enforcement with a willingness to cooperate. MARTINEZ stated he understood and want to speak with agents.

SA Olivarez explained the law to MARTINEZ a second time and asked him to be certain that he wanted to speak with law enforcement on his own volition. MARTINEZ reiterated his willingness to speak with agents. SA Olivarez advised MARTINEZ of his Miranda Rights to which MARTINEZ acknowledge by signing an HSI Rights Form acknowledging he understood his rights and was willing to answer questions voluntarily without an attorney present. MARTINEZ then made the following statements:

MARTINEZ stated he worked for A&S Transport as a truck driver. Approximately one month ago, MARTINEZ met an individual at a Harlingen, Texas bar who discovered he was a truck driver. This individual offered to pay MARTINEZ $1500.00 USD per illegal alien to smuggle them to Houston, Texas. MARTINEZ agreed to smuggle the group of illegal aliens with his next legitimate load.

On October 15, 2012, MARTINEZ was scheduled to deliver fruit to Indianapolis, Indiana and Cincinnati, Ohio. MARTINEZ made arrangements with the unknown individual to have the illegal aliens delivered to his parked tractor trailer after MARTINEZ had loaded the legitimate load of fruit. MARTINEZ was paid $9750.00 USD in advance by this unknown individual. MARTINEZ arrived at his residence at approximately 2105 hours. Shortly thereafter, the unknown individual delivered the group of illegal aliens to the parked tractor trailer and secured them inside. MARTINEZ left his residence for his trip at approximately 2210 hours.

MARTINEZ drove directly to the USBP Traffic Checkpoint where he consented to an X-ray inspection of his tractor trailer and was subsequently arrested for alien smuggling.

**STATEMENT OF MILTON OSCAR LOPEZ-LOPEZ:**

BPA Miranda advised LOPEZ of his Miranda Rights as per form I-214. Miranda Rights administration was witnessed by BPA J. Bennet. LOPEZ stated he understood his rights and chose to make a voluntary statement without the presence of an attorney.

LOPEZ stated he entered the United States by crossing the Rio Grande River near Hidalgo, Texas on August 28, 2012. LOPEZ was then guided to an unknown house where he stayed for approximately one month with an unknown individual. LOPEZ was introduced to a person, later identified as Armando MARTINEZ, in anticipation of being smuggled through the USBP Traffic Checkpoint. However, LOPEZ could not provide the entire smuggling fee and was allowed to stay at the unknown house and work for his smuggling fee.

After performing household chores for approximately two weeks, LOPEZ was instructed by the unknown individual to purchase a jacket. LOPEZ would be smuggled in a refrigerated trailer. The unknown individual then delivered LOPEZ to an undesignated location where a tractor trailer was parked. LOPEZ was instructed to board the trailer and he would be smuggled to Houston, Texas. The tractor trailer began moving after approximately fifteen minutes.

LOPEZ rode in the trailer for approximately two hours. LOPEZ did not see the driver of the tractor trailer until the two were arrested at the USBP Traffic Checkpoint together.

**STATEMENT OF DANIEL AGUILERA-FLORES:**

HSI/USBP Agent Burdette advised AGUILERA of his Miranda Rights to which he acknowledged by signing an HSI Rights Form. Miranda Rights administration was witnessed by LBPA R. Cawthard. AGUILERA stated he understood his rights and chose to make a voluntary statement without the presence of an attorney.

AGUILERA stated he entered the United States by crossing the Rio Grande River near Hidalgo, Texas on September 11, 2012. He was guided on foot to a road where he was instructed to load into a Dodge truck. He was driven to an old trailer home in Brownsville, Texas. AGUILERA stayed at this trailer home for approximately one month.

On October 16, 2012, an unknown individual picked AGUILERA up from the trailer home and delivered him to a parked tractor trailer. He was instructed to load into the trailer and wait to be smuggled to Houston, Texas. He did not see the driver of the tractor trailer until he was arrested with him at the USBP Traffic Checkpoint.

**STATEMENT OF ANDRES HEREDIA-GARCIA:**

SA Olivarez advised HEREDIA of his Miranda Rights to which he acknowledged by signing an HSI Rights Form. Miranda Rights administration was witnessed by LBPA N. Prado. HEREDIA stated he understood his rights and chose to make a voluntary statement without the presence of an attorney.

HEREDIA stated he entered the United States by crossing the Rio Grande River near Hidalgo, Texas on October 7, 2012. He was guided to an unknown house. He stayed at this house until he was arrangements had been made for him to be smuggled to Houston, Texas.

October 16, 2012, HEREDIA was picked up by an unknown individual and taken to an unknown location where a tractor trailer was parked. HEREDIA was instructed to load into the trailer and

wait to be smuggled to Houston, Texas. He did not see the driver of the tractor trailer until he was arrested with him at the USBP Traffic Checkpoint.

No exculpatory statements were made by any of the subjects involved in this case. The other ten illegal aliens were returned to their country of citizenship.

_____
Charles Eric Lehmann
HSI Special Agent
U.S. Department of Homeland Security

SUBSCRIBED and SWORN
before me this 18th day of October, 2012

_____
B. Janice Ellington
United States Magistrate Judge